157 So.2d 96 (1963)
WILLIAM FREDERICK NELSON, APPELLANT,
v.
THE STATE OF FLORIDA, APPELLEE.
No. 63-85.
District Court of Appeal of Florida, Third District.
October 22, 1963.
Rehearing Denied November 13, 1963.
*97 McGovern, Weinstein & Turner, Miami Beach, for appellant.
Richard W. Ervin, Atty. Gen., and Herbert P. Benn. Asst. Atty. Gen., for appellee.
Before BARKDULL, C.J., and CARROLL and TILLMAN PEARSON, JJ.
PEARSON, TILLMAN, Judge.
William Frederick Nelson was found guilty of assault with intent to commit robbery and sentenced to ten years in the state prison. He has appealed and presents two points which raise (1) the sufficiency of the evidence to support the conviction, and (2) an alleged fatal variance between the information and the evidence.
The evidence conclusively establishes that Nelson, carrying a revolver in his shirt, attempted *98 to enter the main office containing the cashier's cage of the W.T. Grant store in Miami. The door was equipped with an electric lock. Nelson tried to enter by pushing past a store employee, Willie Mae Ferguson, as she was backing out. She testified that he was in a crouched position, that her back was turned and that immediately upon his demand that he be allowed to enter she pushed back and closed the door. When the employee did not yield and closed the door, Nelson fled. During his flight he flourished a weapon in an attempt to escape.
Under these facts, all of which the jury could have believed from the evidence, we hold that the jury had sufficient basis upon which to find the defendant guilty of the crime charged.[1]
The apparent discrepancy between the charge of assault and the act of the defendant here is that the employee, Willie Mae Ferguson, had her back turned to the defendant and the assault was completed by a battery at the time the defendant shoved against her and gave the command that he be given entrance to the room.
We dispose of the first situation, i.e., that the employee's back was turned, upon the basis that so far as the crime of assault is concerned, an assault may be made upon a person even though he had no knowledge of the fact at the time. Perkins, Criminal Law 88-89 (1957). See cases cited at Note 62. Thus, a criminal assault may be committed when an assailant, having the present ability to do so, unlawfully attempts, but is interrupted from, doing violence to the person of one who is asleep. See Ross v. State, 16 Wyo. 285, 93 P. 299, 303, 94 P. 217 (1908). It should be noted that we are here dealing with assault as a crime and not as a tort. If the intended victim is unaware of the attempt, he has suffered no harm and is not entitled to compensation. Restatement, Torts § 22 (1934).
The defendant is not relieved of criminal responsibility because he completed his act with an actual violation of the person of Willie Mae Ferguson, thus becoming guilty of a battery. An assault is included in every battery. 6 Am.Jur.2d Assault and Battery § 7 (1963). See cases collected at Note 15. Therefore, the defendant can gain no comfort from the fact he was also guilty of a battery.
This brings us to the question of whether there was sufficient evidence in the record to prove beyond a reasonable doubt that the defendant, Nelson, had the intent to rob the W.T. Grant store. We believe that his actions as outlined above have no other reasonable explanation, and that to hold that intent was not proven would be to ignore the obvious.
We turn now to appellant's second point in which he claims a fatal variance between the information and the evidence. The information upon which the defendant was tried contained the following charge:
"* * * that WILLIAM FREDRICK NELSON on the 21st day of December, 1962, in the County and State aforesaid, did with force and violence unlawfully and feloniously make an assault upon one Willie Mae Ferguson, with intent to commit a felony, to-wit: Robbery, that is to say, on said date in the County and State aforesaid, the defendant did with force and violence make an assault upon the said Willie Mae Ferguson with a deadly weapon, to-wit: a pistol, without the intent to kill, and did put the said Willie Mae Ferguson in bodily fear and danger of her life, with intent to take, steal, rob and carry away from the person immediate possession, care, custody and *99 control, and against the will of the said Willie Mae Ferguson, certain personal property of W.T. Grant Company, a Delaware corporation, authorized to do business in the State of Florida, a better and more particular description and amount of said property intended to be taken by the said defendant being to the State Attorney unknown. * *"
As above pointed out, the evidence totally failed to show a display of the pistol or an expressed threat to Willie Mae Ferguson. Appellant says that this variance in the proof is material. There is no doubt that if the State fails to prove a material allegation of an information and the issues are submitted to a jury and a jury verdict found, then the verdict must be set aside. The only remaining inquiry then must be whether or not the variance was in this case a material one. Since the use of the gun was not an essential element of the crime of assault with the intent to commit robbery, the allegation that the appellant used the weapon in his attempt was not necessary to the information. § 906.24, Fla. Stat., F.S.A. The failure to prove it therefore does not require reversal of a conviction resulting therefrom where a review of the record fails to suggest that the appellant was in any way misled or failed to secure a fair trial because of the inclusion of the allegation that he used the gun which he in fact had, but did not display until later. § 906.25, Fla. Stat., F.S.A.
Affirmed.
CARROLL, Judge (dissenting).
I respectfully dissent. There is merit to appellant's argument that the evidence is insufficient to support the verdict. The information charged that the accused assaulted Willie Mae Ferguson with a deadly weapon, with intent to take from her property of the company. Such property was not described in the information, being listed there as "unknown." The language of that part of the information (after alleging an assault upon Willie Mae Ferguson) was:
"* * * with intent to take, steal, rob and carry away from the person immediate possession, care, custody and control, and against the will of the said Willie Mae Ferguson, certain personal property of W.T. Grant Company, * * *"
The evidence disclosed that at the time of this incident Willie Mae Ferguson was working in the credit office of the store, where her duties included accepting payments on lay away items, and when finally paid for, to obtain and deliver such articles to purchasers. Lay aways were kept in a room off of the main office which was accessible only through the main office. The door to that office was kept locked and could be opened only on the inside, by operation of an electrical device.
The evidence further showed that on this occasion Willie Mae Ferguson had entered and proceeded through the main office to the lay away room to obtain an article for a customer, and was coming out of the main office with a lay away package when she was assaulted. At that point the accused rushed up and ordered her to leave the office door open. Instead she shut the door, and pushed the man away. He ran and she called out a warning that he had tried to rob the office. Her testimony covering this sequence of events was as follows:
"Q Now, when someone would come in for a layaway purchase and make a payment, where would that property be that they were paying on?
"A It was in a layaway room off the main office.
"Q Describe to the members of the jury that room. Describe how it is separated from the rest of the store.
"A Well, to get into the layaway room, I have to go through the main office first.

*100 "Q How do you get into the main office?
"A It's an electrically locked door, and it has to be opened from the inside.
* * *
"Q About what time of the day or night did this happen?
"A Approximately 7:30.
"Q Would you tell the members of the jury exactly what took place just prior to that time?
"A Well, a customer came in and paid out a layaway, and I had to go get it for her. Going to the office I closed the door behind me, of course. I got the layaway, and I came back out the door.
"Q Now describe to the jury how you came out of the door, and what you had with you, if anything.
"A Well, I had a package in my hand  a fairly small package.
"Q Which hand?
"A Left.
"Q In your left hand?
"A Yes, I did  opening the door with my right hand and then taking the knob on the other side of the door in my right hand also and going to close the door, and then I was rushed by a man, and he said: `Leave that door open.'
"Q Describe to the jury the appearance of this man as you saw him.
"A Well, as I saw him, he was in a crouch with his hand  what looked like a handkerchief or white cloth  holding it over his face.
"Q Which hand?
"A His left hand.
"Q Did you see his right hand?
"A No, sir, because he was crouched over in a semi-crouch.
"Q Did you see where he had that hand?
"A Around his middle.
"Q Tell the jury exactly what happened then.
"A Well, he was pushing into the door, and I said, `oh, no, you don't' and I shut the door and pushed him back.
"Q Did you make contact with him?
"A Yes, sir.
"Q Tell the jury what happened after he said `Don't shut that door.'
"A I pushed him back and shut the door, and he turned, and with a few running steps was out of that hallway on to the main floor. I turned and yelled for Mr. McAnly to stop him. I said, `He tried to hold up the office.'"
The point which impels my dissent is that where the information charged the accused with assault on Willie Mae Ferguson with intent to take property of the store from her, the proofs showed he did not take or evince any intent to take the package she was carrying. On the contrary, he told her to leave the office door open. The intent disclosed was immediately recognized by Willie Mae Ferguson and announced by her as an intent to "hold up the office," that is, an intent to enter the office and steal the company's property from the person or persons working there.
Because of the variance between the allegations and the evidence, the conviction of the offense charged should not stand. 17 Fla.Jur., Indictments and Informations, § 95. The proof, however, established an assault, a lesser included offense. Winburn v. State, 28 Fla. 339, 9 So. 694; 3 Fla.Jur., Assault and Battery, § 33, p. 130. Therefore, under § 924.34, Fla. Stat., F.S.A., the judgment should be reversed and the cause remanded with directions to enter judgment of conviction for assault and pass sentence accordingly.
NOTES
[1] Section 784.06, Fla. Stat., F.S.A. provides that whoever commits an assault with an intent to commit a felony shall be punished to an extent not exceeding one-half of the punishment which could have been inflicted had the crime been committed.